And at this time, we'll hear United States v. Zemlyansky. Good morning, Gerald Brennan, appearing on behalf of the appellant, Michael Zemlyansky. This court uses the totality of circumstances or common objective tests when deciding to apply the issue of collateral estoppel, or the application of collateral estoppel, which focuses on the overlapping characteristics of successively charged criminal conspiracies. Now the collateral estoppel doctrine was implicated here because the government, by its words and its deeds, has admitted that both the enterprises were the same, as well as the racketeering patterns. For example, the government at the first trial sought to introduce evidence of the securities fraud, uncharged securities fraud, under 404B. In other words, before filing the indictment, they understood what the pattern of racketeering activity of the one enterprise was, and was responsible for securities fraud and healthcare fraud in New York City from 2007 to 2012. The government confirmed that in both its opening and closing statements at the second trial, which identified the Danilovich-Zemlyansky organization, DZ, in detail, and described the relatedness and continuity of the conspiracy. And yet, the government decided to restrict its initial prosecution to the healthcare fraud, and strategically named the organization the No Fault Organization. So when the charge enterprises and racketeering patterns are the same, this court engages in a two-step analysis. What did the first jury's acquittals decide, and what was the impact at the second trial? Now, the district court found that the first jury's acquittals decided that either there was no conspiracy, or that Zemlyansky didn't knowingly and willingly join any conspiracy. Now, to understand the impact at the second trial, there are certain things, I think, that are important for this court to notice, to consider. First, the government's opening and closing statements describing the DZ organization as being responsible for a pattern of securities fraud that, in fact, financed the healthcare fraud without a break. Further, the district court let the government introduce the entire healthcare fraud case, rehash it at the second trial, and even let them expand it to include another witness, a new witness, Igor Katzman, who testified extensively about his relationship with the DZ organization, including laundering money for both the securities fraud and the healthcare fraud schemes. Well, at the first trial, the acquitted conduct were the substantive counts, and that left open, because there was a hung jury, the RICO issue. To be convicted of RICO, it was not necessary that your client commit the substantive offenses, and therefore, it would appear that it is a sufficiently distinct charge in the second trial to charge that he was a member of a conspiracy, and among the substantive acts, which he may not have actually himself committed, but that others did, are the substantive charges of which he was acquitted. That's correct, Your Honor, and that you've just mentioned the essential element or strict element or strict evidence test application of the collateral estoppel doctrine. Zemulanski's relying on the alternative application of that doctrine, which is issue preclusion or evidence preclusion so that the defendant is not subject to multiple trials, and I think that's the distinction there. How long was the second trial? How long was the second? How long did it last? Well, it was 3,100 transcript pages. I'm not sure how many days of trial it was. I think it was . . . Why wouldn't the evidence of the healthcare fraud be admissible as a predicate act in the RICO case? The fact that he was acquitted of the substantive counts of healthcare fraud or mail fraud doesn't preclude him from having RICO liability because RICO liability doesn't require that he commit healthcare fraud or mail fraud himself. It requires only that he conspires for the benefit of the enterprise, doesn't it? That's correct, Your Honor, but . . . The fact that he was acquitted of the substantive counts of healthcare fraud or mail fraud don't preclude him from being charged with RICO fraud and retried on the RICO conspiracy because RICO conspiracy intent is for the benefit . . . he conspires for the benefit of the enterprise as opposed to conspiracy to commit mail fraud requires that he have a specific knowledge and specific intent to engage in a conspiracy to commit mail fraud, right? That's correct. The intent requirement is different between the two conspiracies, so therefore I don't understand how acquittal on the conspiracy precludes . . . either precludes prosecution on the RICO conspiracy, the broader RICO conspiracy, or proof of the existence of the substantive acts which serve as the predicate acts for the overlying RICO enterprise. Well, because this Court has recognized fundamental principles of fairness. But if I can be convicted . . . if I'm acquitted of shooting someone, I can still be convicted of engaging in a RICO enterprise, one of which the predicate acts were shooting someone, because I don't have to have either intended to shoot them myself or necessarily that someone else would. The predicate acts are those acts which further the enterprise, aren't they? Yes, but . . . So how does this acquittal on the substantive act or even the substantive conspiracy, given that you've agreed with me that the intent is different for both in terms of the intent for a conspiracy to commit mail fraud or health care fraud . . . Because . . . With regard to engage in a RICO conspiracy. Well, the issue is not, again, the strict evidence test dealing with intent. The issue is whether the trial was unfair because the government was allowed to rehash its entire health care fraud case at a second proceeding after the acquittals. You're relying on a line of cases that includes Cramer, correct? Yes. And I'm glad you brought that up. And Cramer said that the government may not prove the new charge by asserting facts necessarily determined against it on the first trial, but is it necessarily . . . has it necessarily been determined that your client was not part of a conspiracy to do acts of which your client was acquitted as a substantive matter? Well, Cramer also said . . . Somebody may have done them, only he didn't do them, but he was part of the conspiracy in a nutshell. Well, I think Cramer is really on point here. The panel reversed in Cramer because the rechild jury . . . this is a quote . . . the in combination with other evidence as probative of the defendant's participation in the conspiracy. And because of that, they held that it was fundamentally unfair. You're definitely right. He couldn't be retried for mail fraud conspiracy or mail fraud. You're right about that. Yes. But the point is that the jury hung up on the RICO. I mean, if the jury had acquitted him of RICO health care fraud, I think you're right. But . . . and I don't know how they could have . . . well, I don't have to figure that one out yet. But they didn't. And so, I don't understand how his acquittal on the . . . the acquittal on the substantive or the conspiracy acts necessarily meant that they couldn't . . . that there was a fact that they had already determined that precluded his conviction on the RICO conspiracy. I don't see that. Both Kramer and this Court's decision in Mespoled were the same factually in that the defendant was acquitted of the substantive offense, retried with the conspiracy . . . RICO conspiracy? No. Not in those cases. And that, my friend, is a huge difference. Yes and no. Yes and no. Okay. And I think we still have an issue here that's really important. Mespoled said the panel acknowledged that they could never know . . . although they could never know how much weight the rehashed evidence carried with the second jury, from the standpoint of double jeopardy, the double jeopardy clause, the key fact was that the retrial exposed the defendant to the ordeal of multiple trials and the repeated risk of conviction for the same conduct for which he was acquitted. Could they have retried him on the health care fraud RICO account? Yes. Yes. Okay. Yeah. I'm not . . . Could they have decided to add additional evidence if they wish to do so? Depending on the evidence, yes. Okay. Fair enough. Thank you. You've reserved rebuttal? I would like to . . . I have . . . oh, I'm finished. You've reserved one minute's rebuttal. Yeah, I'll . . . okay. I'll hear you then, sir. Thank you.   Thank you. Thank you. Thank you. May it please the Court, Joshua Neftalos for the United States. I represented the United States at the second trial below. The defendant's double jeopardy rights were not violated when he was tried on the second S18 indictment. Let me just respond briefly to the basic points that my adversaries brought up. First, he continues to assert that the enterprise, the RICO conspiracy charge and the S13, which was the first trial indictment, and the S18 indictment, the second trial, are the same. That's just not accurate. Your Honors can look at the pleadings. The first S13 indictment charged simply an enterprise engaged in a no-fault insurance scheme where the pattern of racketeering was mail fraud and wire fraud. The second indictment, which is the S18, charged a much broader conspiracy, which was called the Zimlansky-Danilovich organization. That was engaged in securities fraud, mail fraud, wire fraud, illegal gambling, and the health care fraud scheme. And there were six patterns of racketeering that mirrored those. So the straight double jeopardy issue, I think we can all agree that since he was not tried on any of the counts that he was acquitted of, there is no double jeopardy issue. The 404B point, I think that obviously the government was not permitted to offer the securities fraud or gambling evidence as 404B. That was not enterprise evidence. That was 404B. It never came in. After the acquittal and the hung jury, the government expanded the RICO enterprise and charged those as predicates. Now moving to the evidence piece, I think Judge Jacobs and Judge Wesley, you have it exactly right. RICO is just different, and the government is allowed to offer evidence even of acquitted conduct in support of proving the defendant's involvement. Assuming you're right, wouldn't it give you a queasy feeling that people could be retried over and over again as you cook the same dish with a different sauce and just try people until you get a conviction? In the abstract, of course, but that's not what happened here. I think there was the RICO conspiracy where there was a hung jury. This wasn't a case where the jury acquitted. The government refashioned a charge and then came and indicted to get around it. We were permitted to go forward on the original S13 indictment. Then because the investigation continued to evolve, the RICO conspiracy was charged separately as a different enterprise that was substantially broader, and we are not prohibited from increasing our proof. Just to be clear, I think, Judge Jacobs, you asked how long was the trial. It was about four weeks long. There were multiple schemes, two or three securities fraud schemes, money laundering all over the world, illegal gambling. The default evidence was certainly . . . The adversary argues that at least half the trial was spent with the jury listening to the same testimony that the last jury listened to. I think it's fair to say that half the trial was probably about the no-fault, but it wasn't the exact same evidence. We did reuse, obviously, some of the evidence, but there were two new cooperating witnesses and the focus of the government's evidence . . . Does that create a problem under Mespalad and Kramer? I don't think at all. Mespalad is a . . . I'm not sure how to pronounce it, but Mespalad. You can't do it either. Don't follow me. It was a very narrow case. When Judge Kaufman wrote it, he said there was really only one issue that was in dispute at the original trial. This was like a Studio 54 classic narcotics case. A guy falls asleep and there's a cocaine deal in the apartment. The only issue was, at the first trial, did this individual possess the cocaine? He was acquitted of the substantive and the jury hung on the conspiracy. Then they go to retrial on the conspiracy and they want to put in the evidence of possession. That is a narcotics case. This is a wide-ranging, classic organized crime case where the defendant went to great lengths to keep himself off of paper that there was no evidence. That is exactly what RICO was for and that's why we were allowed to present the health insurance evidence to prove up the enterprise. At the second trial, just to be clear, we focused our presentation of the evidence on the fact that Mr. Zemlansky really made efforts to float above in the classic organized crime LCM type of case where he did not want to be involved, which makes sense. The jury did not hear that he was on a day-to-day basis doing everything here. He was running a large RICO enterprise. In terms of the ultimate issue, I'll sit down briefly. Clearly the jury did not reach the ultimate issue here. This is a very high burden for the defendant to meet. It's very rare, as this Court has pointed out. All the jury . . . we don't know what the jury concluded. Judge Atkin, in his detailed opinion, said we just don't know. We know that he was acquitted of the underlying healthcare fraud and money laundering counts, but we don't know because they hung on the RICO enterprise. You can obviously conclude that someone who is a member of a RICO conspiracy did not commit the underlying racketeering acts, as Judge Wesley pointed out. That's not required under RICO, unless Your Honors have any questions. We'll rest on our brief. Let me ask you a question. He does make an argument that his motion for acquittal should have been granted after the acquittals in the first trial, but I looked at the record. Didn't he withdraw that motion at one point in time? Motion for acquittal . . . After the first trial verdict came in and there was acquittals on the regular conspiracy and the substantive cases, he made a motion for acquittal based upon the fact that he couldn't be convicted of the RICO conspiracy in light of the acquittals. He makes that argument very briefly in his brief to us. I have in the record here that he withdrew that application. Your Honor, if I could just console my colleague who was . . . I don't recall that exactly. All right. If you don't, don't worry about it. I'll find it. Your Honor, I don't recall the withdrawing, but Judge Etkin's opinion dealt with both the straight double jeopardy issue, should they dismiss it, and the use of the evidence in the subsequent trial. I'm not 100% sure what they did. Lastly, if you had just gone back and retried the health care RICO, you'd still be able to offer proof of the substantive acts of health care fraud because you've got to prove predicate acts, right? Correct. We were perfectly permitted to do that. That's what the Schenberg case for the Eleventh Circuit said. That's what the case for the Eastern District of Pennsylvania we cited said. Just to note, the defendant has cited no RICO conspiracy cases that support his position. He cited a very narrow narcotics case, the Mespolide case, and that is because we could have gone forward on the S13 indictment. We did not. We went forward on a much broader, different enterprise indictment. Thank you. Thank you, Your Honor. We'll hear rebuttal. First of all, with respect to the government's claim that the two prosecutions were different, the two organizations were different, the indictments were different, that's just completely wrong because relatedness and continuity can be established simply by connecting diverse predicate acts to an enterprise that's engaged in the business of racketeering. They've argued that throughout the second trial. So, the other thing, Zemelinsky's primary argument really focuses not on barring a retrial barring the RICO conspiracy. That's not what his argument is. It's that collateral estoppel may also apply to operate as a bar to the introduction and augmentation of certain facts. And all of those facts of the health care fraud were introduced at the second trial. One thing I wanted to mention at the second trial, the government actually ignored the court order. The court denied the collateral, Zemelinsky's collateral estoppel argument, denied it. But he did say, he did preclude them from arguing that Zemelinsky was guilty of health care fraud. The government ignored that order and actually went wild merging the two and claiming he was guilty of that. And that's described in more detail at the opening brief at page 37 in the reply brief from 13 to 14. So I think that's a really important point, too. And I think I submit. Thank you very much. Thank you both. We'll reserve decision.